IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MATTRESS GIANT CORPORATION, §
§
                Plaintiffs, §
§ Civil Action No. 3:07-CV-1728-D
VS. §
§
MOTOR ADVERTISING & DESIGN §
INC., et al., §
§
                Defendants. §

MEMORANDUM OPINION
AND ORDER

    Defendants Motor Advertising and Design, Inc. ("Motor Advertising") and John Henning ("Henning") jointly move under Fed. R. Civ. P. 55(c) to set aside the clerk's entries of defaults against them. Plaintiff Mattress Giant Corp. ("Mattress Giant") moves the court under Rule 55(b)(2) to enter a default judgment against Motor Advertising and Henning. Concluding that the default entered against Henning was premature and that Mattress Giant failed to effect proper service on Motor Advertising, the court grants defendants' motion and sets aside the two defaults entered against them, and it denies Mattress Giant's motion for default judgment.

I

    Between 2003 and 2005, Mattress Giant and Motor Advertising entered into three separate contracts under which Motor Advertising and Henning created for Mattress Giant a series of advertisements that developed a theme of "catch some Z's" ("the Campaign"). When

Mattress Giant decided in 2007 to look for a new advertising firm, defendants asserted intellectual property rights in the "catch some Z's" design concept and the derivative materials that were produced during the Campaign.  On October 12, 2007 Mattress Giant filed suit against Motor Advertising and Henning, seeking a declaratory judgment under 28 U.S.C. § 2201 that, under the terms of the three contracts, Mattress Giant owns all the copyrighted works related to the Campaign.  Alternatively, Mattress Giant seeks a declaratory judgment that it has not infringed on any of defendants' copyrights.

After several unsuccessful attempts to serve Henning at his Minnesota home, Mattress Giant moved for substituted service under Fed. R. Civ. P. 4(e)(1) and Tex. R. Civ. P. 106(b).  It sought court approval to serve Henning by attaching the summons and complaint to the door of Henning's residence and by mailing a copy of the summons and complaint to his residence.  On November 27, 2007 the court granted Mattress Giant's motion for substituted service.  The next day, Mattress Giant mailed a copy of the summons and complaint to Henning's Minnesota residence via first class mail.  On December 4, 2007 Mattress Giant's process server placed a copy of the summons and complaint under the front door of Henning's residence.  On December 20, 2007 the same process server firmly affixed a copy of the summons and complaint to the front door of Henning's residence.

Mattress Giant also relied on substituted service of Motor Advertising by serving the summons and complaint on the Texas Secretary of State on November 7, 2007. On November 13, 2007 the Secretary of State forwarded copies to Motor Advertising's business address in St. Paul, Minnesota. The process was returned to the Secretary of State on December 21, 2007, bearing the notation "unclaimed."

On January 4, 2008 David Chaumette, Esquire ("Chaumette") telephoned Mattress Giant's counsel on defendants' behalf to request an extension of time to answer the complaint. Chaumette explained that he was about to leave town for an arbitration in an unrelated matter and would not return until January 12. Chaumette also indicated that he had not yet been retained by defendants and probably would not be unless Mattress Giant was willing to settle the case. Mattress Giant's counsel informed Chaumette that Mattress Giant was unwilling to settle. The telephone conversation concluded, however, without an agreement for an extension of time to answer the complaint.

On January 7, 2008, while Chaumette was out of town, Mattress Giant's counsel sent Chaumette an email reiterating Mattress Giant's position that it was unwilling to settle and stating that it would not agree to an extension of time for defendants to answer the complaint. On January 8, 2008 Mattress Giant moved to enter defaults against both defendants under Rule 55(a). On January 9,

2008 the clerk entered defaults against both defendants.

Within a week of the entries of the defaults, defendants moved to set them aside under Rule 55(c). Two days later, Mattress Giant moved to enter a default judgment against both defendants under Rule 55(b)(2). In opposing defendants' motion to set aside the entries of default, Mattress Giant requests an award of the reasonable attorney's fees that it incurred in serving defendants by substituted service and in opposing their motion.

II

The court first addresses defendants' motion to set aside the entries of defaults because, if it is granted, it disposes of Mattress Giant's motion for default judgment.

A

"Defaults are not favored and their strict enforcement 'has no place in the Federal Rules.'" *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003) (quoting *Amberg v. FDIC*, 934 F.2d 681, 686 (5th Cir. 1991)). "[E]ntries of default are serious; 'where there are no intervening equities, any doubt should . . . be resolved in favor of the movant to the end of securing a trial upon the merits.'" *Id.* (quoting *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (brackets omitted)).

An entry of default may be set aside under Rule 55(c) for "good cause." "The requirement of good cause has generally been interpreted liberally." *Effjohn Int'l Cruise Holdings*, 346 F.3d at

563 (internal quotation marks, brackets, and ellipsis omitted).

> Three factors are examined for determining "good cause" *vel non*: (1) whether the failure to act was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious claim has been presented. These factors are not exclusive; instead, they are to be regarded simply as a means to identify good cause. Other factors may be considered, such as whether the party acted expeditiously to correct the default.

*Id.* (citations omitted).

B

Ordinarily, a Rule 55(c) motion to set aside an entry of default entails an analysis of the "good cause" factors cited above. But assuming, as appears to be true,[1] that defendants have

---

[1]At least as to Motor Advertising, defendants' motion does not appear to establish "good cause." Without an allegation that service upon Motor Advertising was defective, Motor Advertising was obligated to file a responsive pleading by November 27, 2007. On the willfulness factor, in which the Fifth Circuit has simply looked for "excusable neglect," *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992), Motor Advertising's only response is that it sought an extension of the answer date by telephoning Mattress Giant's counsel on January 4, 2008. But that telephone conversation took place over one month after a default could have been entered against Motor Advertising, assuming that service was proper. Motor Advertising does not present any other justification for its untimely answer. For example, Motor Advertising does not allege that the Secretary of State mailed the summons and complaint to the wrong address.
 Moreover, Motor Advertising's "meritorious defense" is summarized in one sentence of its brief. Such a conclusory presentation of a defense has been deemed insufficient. *See Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251-52 (4th Cir. 1967) ("[The defendant] presented no statement of underlying facts to support [its assertion of a meritorious defense] to enable the court to appraise the merits of the claimed defense."); *In re Waggoner*, 2007 WL 3171740, at *4 (Bankr. N.D. Tex. Oct. 24, 2007); *Omnitrition Int'l, Inc. v.*

failed to establish "good cause," the court still concludes that the entries of defaults against them must be set aside because the record demonstrates that (1) the clerk entered the default against Henning before his answer was due, and (2) Mattress Giant's substituted service of Motor Advertising was defective.

III

The court first considers the entry of the default against Henning.

A

"To obtain a valid default judgment, the record must reflect strict compliance with the rules of civil procedure respecting the issuance of citation, the manner and mode of service, and the return of process." *Commercial Union Assurance Co. PLC v. Silva*, 988 S.W.2d 798, 800 (Tex. App. 1999, no pet.).[2] "Service of process must be performed in strict compliance with appropriate statutory provisions to support a default judgment." *Dolly v. Aethos Commc'ns Sys., Inc.*, 10 S.W.3d 384, 388 (Tex. App. 2000, no

---

*Omnilife USA, Inc.*, 1997 WL 560772, at *2 (N.D. Tex. Aug. 29, 1997) (Fitzwater, J.) ("[The defendant] has merely advanced conclusory and *ipsi dixit* grounds for asserting that it has a meritorious defense[.]").

[2]Although federal procedure generally applies in this case, the court can rely on Texas authorities concerning the adequacy of process because the pertinent federal rules of service incorporate Texas proceedings in the context of this case. *See* Rule 4(e)(1) & 4(h)(1)(A); *see also Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 398-99 (5th Cir. 2001) (affirming order setting aside default judgment for improper service under Texas long arm statute because service was not in strict compliance with Texas law).

pet.). "Virtually any deviation will be sufficient to set aside a default judgment in a restricted appeal." *Id.* "Strict compliance is particularly important when substituted service under rule 106 is involved." *Id.* "When a trial court orders substituted service pursuant to rule 106, the only authority for the substituted service is the order itself." *Id.* "Therefore, the requirements set forth in the order must strictly be followed." *Id.* "Any deviation from the trial court's order authorizing substituted service necessitates a reversal of the default judgment based on service." *Id.*

B

On November 27, 2007 the court granted Mattress Giant's motion for substituted service upon Henning under Rule 106(b). The order stated, in relevant part:

> plaintiff is authorized to serve defendant John Henning with the summons and complaint by firmly affixing and attaching a copy of the summons and complaint to the door of defendant John Henning's place of residence . . ., and by mailing a copy of the summons and complaint via first class mail to defendant John Henning at [address].

Nov. 27, 2007 Order ("Substituted Service Order").[3] The next day, Mattress Giant fulfilled the latter requirement of the Substituted Service Order, i.e., mailing a copy of the summons and complaint

---

[3]In this memorandum opinion and order, the court for privacy reasons has redacted the specific references to Henning's home address. *See* Rule 5.2. The address was included, however, in the Substituted Service Order.

via first class mail to Henning's residence.  But the first requirement—that the process server firmly affix and attach a copy of the summons and complaint to the door of Henning's residence—was not met until December 20, 2007.  Although on December 4, 2007 the process server placed a copy of the summons and complaint *under* the door of Hennings' residence, this method of service did not strictly comply with the terms of the Substituted Service Order.  Therefore, Mattress Giant's December 4, 2007 attempt to serve Henning was ineffective.

Because Mattress Giant did not comply with all essential elements of the Substituted Service Order until December 20, 2007, Henning had until January 9, 2008 to file a responsive pleading to the complaint.  *See* Rule 12(a)(1)(A)(i).  Rule 55(a) authorizes the clerk to enter a default against any party who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]"  Thus the earliest the clerk could have entered a default against Henning was January 10, 2008.  Because the default against Henning was entered prematurely on January 9, 2008, the clerk lacked authority under Rule 55(a) to enter the default, and Henning is entitled to set aside the default entered against him.

IV

The court next considers Mattress Giant's attempt to serve Motor Advertising through service on the Texas Secretary of State.

A

In two circumstances a corporation, such as Motor Advertising, that is not incorporated in the state of Texas can be served by substituted service on the Texas Secretary of State. If the corporation is authorized to do business within the state of Texas, the plaintiff can serve the Texas Secretary of State pursuant to Tex. Bus. Corp. Act. Ann. art. 8.10, § B (Vernon 2003). *See, e.g., Lynn McGuffy Co. v. Perfected Indus. Prods., Inc.*, 683 S.W.2d 781, 783 (Tex. App. 1984, writ ref'd n.r.e.). And if the corporation is not authorized to do business within the state, the plaintiff can serve the Texas Secretary of State under the Texas long arm statute, Tex. Civ. Prac. & Rem. Code Ann. § 17.044(b) (Vernon 1997). *See, e.g., Morris v. Zesati*, 162 S.W.3d 669, 671 (Tex. App. 2005, no pet.). Mattress Giant did not specifiy the applicable statute under which service was made on the Texas Secretary of State. Accordingly, the court will analyze Mattress Giant's attempted service under both provisions.

B

Article 8.10, § B provides, in pertinent part:

> Whenever a foreign corporation authorized to transact business in this State shall fail to appoint or maintain a registered agent in this State, or whenever any such registered agent cannot with reasonable diligence be found at the registered office, or whenever the certificate of authority of a foreign corporation shall be revoked, then the Secretary of State shall be an agent of such corporation upon whom any such process, notice, or demand may be served.

This part of article 8.10, § B is materially identical to its counterpart for domestic corporations, Tex. Bus. Corp. Act. Ann. art. 2.11, § B (Vernon 2003).[4]

"[A] default judgment obtained after an attempted substituted service on the Secretary of State will not stand absent a showing by the plaintiff that, before it resorted to substituted service on the Secretary of State, it first used reasonable diligence in seeking service on the registered agent of the corporation." *Marrot Commc'ns, Inc. v. Town & Country P'ship*, 227 S.W.3d 372, 377 (Tex. App. 2007, pet. denied) (internal quotation marks and

---

[4]Article 2.11, § B provides:

> Whenever a corporation shall fail to appoint or maintain a registered agent in this State, or whenever its registered agent cannot with reasonable diligence be found at the registered office, then the Secretary of State shall be an agent of such corporation upon whom any such process, notice, or demand may be served.

brackets omitted) (setting aside default judgment obtained after service under article 2.11, § B because the record at the time the default judgment was entered did not affirmatively show that the plaintiff had used reasonable diligence in seeking service on the company's designated agent). "The use of reasonable diligence in attempting to serve a corporation's agent is a pre-requisite to attempting service through the secretary of state." *AAA Navi Corp. v. Parrot-Ice Drink Prods. of Am., Ltd.*, 119 S.W.3d 401, 403-04 (Tex. App. 2003, no pet.) (setting aside default judgment obtained through service under article 2.11, § B) ("Our review of the record has not uncovered any evidence that [the plaintiff] exercised reasonable diligence in attempting to serve [the defendant's] agent prior to accomplishing service through the secretary of state. As the record does not reflect that [the plaintiff] met the prerequisites set forth in Article 2.11, the trial court could not reasonably conclude that [the defendant] had been served in strict compliance with the law.").

C

Before Mattress Giant could properly serve Motor Advertising by substituted service under article 8.10, § B, it was necessary that Mattress Giant show that it first exercised reasonable diligence in attempting to serve Motor Advertising's registered agent. The record is devoid of any evidence that Mattress Giant exercised such reasonable diligence. Thus service of process under

article 8.10, § B was defective. Therefore, if Mattress Giant's November 7, 2007 service upon the Secretary of State was premised on article 8.10, § B, Motor Advertising is entitled to set aside the entry of default against it.

Even if Mattress Giant can now affirmatively prove that it exercised reasonable diligence before serving the Secretary of State, the service is still defective because "this evidence was not in the record and before the trial court when it entered the default . . . against [the defendant]." *Marrot Commc'ns.*, 227 S.W.3d at 378 (refusing to consider affidavits that demonstrated plaintiff's reasonable diligence because these affidavits were not in the record when default judgment was entered).

D

The court now considers whether service was effective under the Texas long arm statute.

1

Section 17.044(b) states:

> The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.

In serving the Secretary of State under § 17.044(b), "an omission of an allegation in the petition that a defendant did not maintain a place of business in Texas is fatal to the [default] judgment."

*Lozano v. Hayes Wheels Int'l, Inc.*, 933 S.W.2d 245, 247 (Tex. App. 1996, no writ). In *Lozano* the plaintiff alleged in his petition that the foreign corporate defendant had not designated an authorized agent upon whom service of citation could be made, but did not specifically allege that the defendant had failed to maintain a resident agent for service of process. *Id.* at 248. The court held that the "pleadings were insufficient to support the default judgment," because "[a] default judgment entered following substituted service is void where there has not been strict compliance with the rules relating to service of citation. *Id.* at 247-48. The plaintiff later amended his petition to cure the defect, but the court's holding remained unchanged:

> Although [the plaintiff] amended his pleadings and service following the judgment to correct these mistakes, the case law clearly establishes that an ex post facto amendment cannot supply the necessary allegations on which substituted service was made, because the defendant is entitled to base its decision to answer the suit upon the sufficiency of the statutory allegations in the petition it received.

*Id.* at 248.

In *Boyo v. Boyo*, 196 S.W.3d 409 (Tex. App. 2006, no pet.), the plaintiff's petition "contain[ed] no allegations that the defendant does not maintain a regular place of business in Texas, and has not designated or maintained a resident agent for service of process in Texas." *Id.* at 416. Rather, as the court noted, "the pleadings assert[ed] generally that [the corporate defendant] is the alter

- 13 -

ego of [another defendant who was properly served], but these [were] not set out as jurisdictional allegations and [the other defendant was] not identified in the pleading as an agent for service of process for [the corporate defendant]." *Id.*

> Alter ego is not a service theory supported by the pleadings in this case, however. [The plaintiff] attempted service on the Secretary of State under section 17.044(b). For service of process on the Secretary of State under § 17.044(b) as [the plaintiff] attempted, *the pleadings must state the foreign corporation does not maintain a regular place of business or a designated agent for service of process in Texas.*

*Id.* at 417 (emphasis added). The court thus set aside the default judgment against the foreign corporation. *Id.* at 417.

2

Mattress Giant's complaint fails to allege that Motor Advertising does not maintain a regular place of business in Texas and that it has not designated an agent for service of process in Texas. Although Mattress Giant alleges that there is such a unity between Motor Advertising and Henning that the separateness of Motor Advertising has ceased, this allegation is not set out as a jurisdictional allegation. Thus, under *Boyo*, Mattress Giant's service upon the Secretary of State, if premised on § 17.044(b), was defective. Even if disregarding Motor Advertising's corporate identity were a valid theory of service of process, service upon Henning in lieu of serving Motor Advertising would not help Mattress Giant in this case because the default against Motor

- 14 -

Advertising was entered before it would have been required to answer. *See supra* § III(B). As in *Lozano*, a later amendment to Mattress Giant's complaint would not cure defective service attempted under § 17.044(b).

Because, whether it was based on article 8.10, § B or on § 17.044(b), Mattress Giant's service on the Secretary of State as the agent of Motor Advertising was defective, Motor Advertising is entitled to have the default entered against it set aside.

* * *

Accordingly, the court grants defendants' January 16, 2008 motion to set aside entry of default.[5] The court denies Mattress Giant's January 18, 2008 motion for default judgment.

**SO ORDERED.**

March 25, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[5] In view of this decision, it follows that Mattress Giant is not entitled to an award of attorney's fees, and this request is denied.